United States District Court
Southern District of Texas
**ENTERED**
November 15, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT     SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| DISH Network, LLC, | § § § | |
| Plaintiff, | § § | |
| versus | § § | Civil Action H-21-859 |
| Dinesh Vigneswaran, *et al.*, | § § § | |
| Defendants. | § | |

# Default Judgment and Injunction

Throughout this litigation, to label Dinesh Vigneswaran as troublesome would be an understatement. He has repeatedly failed to comply with the Court's instructions and has made a mockery of basic, integral judicial processes. In light of Vigneswaran's conduct, Plaintiff DISH Network, LLC has moved for the defendant to be held in contempt and sanctioned. This motion succeeds.

1. *Vigneswaran's Behavior*

The background facts of this case, with respect to ChitramTV, have been discussed in this Court's previous grant of default judgment against ChitramTV and will not be rehashed here.[1] Against Vigneswaran, DISH claims that he is a Canadian resident who facilitated ChitramTV's infringement. According to DISH, Vigneswaran was ChitramTV's "US Manager," a role in which he was in charge of reselling Chitram set-top boxes and Chitram subscriptions in the United States.[2] Prior to filing suit, DISH sent Vigneswaran notices of

---

[1] *See* [Doc. 40].

[2] [Doc. 1] at ¶ 4.

1

infringement on various occasions, to which he failed to respond.[3]

Vigneswaran's disrespect of this litigation has been rampant from its very onset. The following lists some of his transgressions:

- After initially failing to respond to the complaint, DISH moved for default judgment against Vigneswaran.[4] He answered more than a month after the clerk entered default,[5] and the Court withdrew entry of default.[6]
- Ahead of any pre-trial conference, Vigneswaran moved for a "permanent exemption," which, as this Court said at the time, "[t]o the best of the court's ability, this most appears to be a request to appear by electronic or other remote means," given his Canadian location and alleged financial difficulties, and the Court permitted him to call into the next conference.[7] Despite this accommodation, Vigneswaran later informed the Court, ahead of the scheduled conference, that he had previously "ask[ed] for full exemption," that "[t]he plaintiff is searching for the wrong person," and requested "to completely exempt [him]self from this matter."[8]
- Ahead of the March 10, 2022 conference, DISH informed this Court that it had repeatedly attempted to confer over various issues, including discovery as mandated by Rule 26(f)(1), and Vigneswaran had not

---

[3] Id. at ¶ 37.

[4] [Doc. 35].

[5] [Doc. 38].

[6] [Doc. 41].

[7] [Doc. 46]. While this request seemed to perhaps be a shameless attempt to dodge this lawsuit altogether, the Court elected to give him the benefit of the doubt in construing it as a request to proceed remotely.

[8] [Doc. 48]. This letter indicated that his previous letter was, indeed, a shameless attempt to dodge this lawsuit altogether.

- responded.[9] He also did not make his initial disclosures, as required under Rule 26(a)(1).
- Since the Court's discovery order, Vigneswaran has elected to make a mockery of the discovery process. To term his responses to routine discovery requests as "lacking" would be an understatement, as he would reject such discovery efforts under what could be best described as broad, boilerplate made-up objections and privileges that have little to no basis in law or even common sense.[10]
- In response to Vigneswaran's inexplicable "attempt" at discovery compliance, DISH moved to compel discovery. Vigneswaran then made "supplemented" his responses, offering the same unfounded privileges and rambling about why he is clear of wrongdoing.[11] This Court agreed with DISH, finding Vigneswaran's objections to be "either repetitive, unfounded privileges under the law, untimely, vague, or boilerplate."[12] This Court then instructed Vigneswaran, in unequivocal terms, to fully respond to the specific discovery requests and properly make initial disclosures. The Court elected to not sanction Vigneswaran for his delay, but made clear that he was on his "last warning," and that "all future recalcitrance may be met with sanctions."[13]
- After being instructed to comply, and on his "last warning," Vigneswaran failed to produce most documents, claiming that he did not have them, although his truthfulness and effort at procurement is dubious at best. For the few requests he did produce, he has unilaterally redacted such

---

[9] [Doc. 51].

[10] *See* [Docs. 57–59].

[11] *See* [Doc. 63].

[12] [Doc. 64].

[13] *Id.*

documents selectively, so as to make them virtually useless.[14]
- DISH has moved for contempt and sanctions against Vigneswaran, and this motion is pending before the Court. In response, Vigneswaran made broad, unfounded accusations, including that DISH filing the motion was "unlawful, extralegal, and illegal," and yet again parroted the same generalized arguments about his lack of wrongdoing.[15]

The course of this litigation reveals Vigneswaran's callous disregard for the American court system. His failure to comply with explicit instructions has been alarming, and the Court has reached its tolerance. Reviewing the record, the only reasonable explanation for his conduct is that he is intentionally dragging his feet and sabotaging the advancement of this litigation, hoping that proving himself to be an extremely difficult litigant may motivate the plaintiff, or this Court, to simply abandon this litigation. DISH has not quit, and this Court is unaware of a legal system wherein refusing or feigning cooperation makes a lawsuit magically disappear.

2. *Civil Contempt and Sanctions*

Under Rule 37, sanctions are appropriate when a party has been uncooperative in the discovery process. Rule 37(b)(2) provides that when a party declines to obey an order to provide or permit discovery, the court may, among other recourse, render a default judgment against the disobedient party.[16] District courts enjoy broad discretion to remedy violations of discovery rules.[17]

For lesser sanctions, district courts generally must determine that the

---

[14] [Doc. 67].

[15] *See* [Doc. 72].

[16] Fed. R. Civ. P. 26(b)(2)(vi).

[17] *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488 (5th Cir. 2012) (citing *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir.1990); *L. Funder, L.L.C. v. Munoz*, 924 F.3d 753, 758 (5th Cir. 2019) ("We thus review a Rule 37(b)(2)(A) sanction for abuse of discretion.").

4

sanctions are "just" and "related to the particular 'claim' which was at issue in the order to provide discovery."[18] However, for litigation-ending sanctions, district courts must make four additional findings: (1) the discovery violation was committed willfully or in bad faith; (2) the client, rather than counsel, is responsible for the violation; (3) the violation "substantially prejudiced the opposing party"; and (4) a lesser sanction would not "substantially achieve the desired deterrent effect."[19]

A. Willfulness

On the first finding, willfulness and bad faith are on evident display here, as Vigneswaran has plainly failed to comply with discovery. He has still failed to make proper initial disclosures despite multiple admonitions from the plaintiff and this Court; his compliance with respect to the Court's March 10, 2022 discovery order[20] could be best described as a farce; even after this Court gave him his "last warning," he still did not meaningfully attempt to respond to interrogatories, make proper initial disclosures, or provide meaningful documents; and upon learning that DISH moved for sanctions, he still would offer only the same generalized recitals of innocence in lieu of offering the required discovery. This Circuit has found bad faith to exist where a party demonstrated "evasive and incomplete responses," and Vigneswaran's behavior falls comfortably within those parameters.[21]

B. Client Vs. Party

The second requirement that the client, rather than counsel, is responsible for the violation, is not at issue because Vigneswaran is a pro-se

---

[18] *L. Funder, L.L.C.*, 924 F.3d at 758.

[19] *Id.* at 758–59 (citing *FDIC v. Conner*, 20 F.3d 1376, 1380–81 (5th Cir. 1994).

[20] [Doc. 54].

[21] *See, e.g., United States v. $49,000 Currency*, 330 F.3d 371 (5th Cir. 2003) (affirming grant of default judgment as a sanction where a party failed to comply with discovery in several material respects); *L. Funder, L.L.C.*, 924 F.3d 753 (same).

litigant. While the Court recognizes Vigneswaran's pro-se status, and has in fact afforded him much grace until now in light of his status, those who proceed without counsel "cannot . . . be permitted to enjoy much or protracted advantage by reason of that circumstance."[22]

### C. Substantial Prejudice

The third requirement is that the discovery violation substantially prejudiced the opposing party. Here, the discovery deadline has passed and DISH has been in limbo as it repeatedly makes unsuccessful attempts to direct Vigneswaran to produce anything of substance. From DISH's point of view, this litigation may as well be at its is infancy when it comes to Vigneswaran's production of discovery. Its position is worse than an ordinary delay in production; rather, the defendant appears stubbornly dedicated to keep producing rubbish and otherwise treat this litigation as a joke. This litigation has been meaningfully delayed, and, worse yet, this Court has no reason to believe that any end is in sight. DISH has dedicated significant efforts to address Vigneswaran's recalcitrance, and has wasted time and resources attempting to prompt a discovery process that has thus far proven overwhelmingly fruitless. There has been substantial prejudice.

### D. Lesser Sanctions

In light of the facts of the case, particularly Vigneswaran's cavalier defiance of the Court's instructions, the Court finds that lesser sanctions would not substantially achieve the desired deterrent effect. As discussed above, this Circuit has affirmed sanction of default where the defendant failed to provide documents and answer interrogatories.[23] Not only so, but given Vigneswaran's unwillingness to comply as needed to advance this litigation, sanctions short of default are very likely to merely delay the inevitable, and in the meantime, this

---

[22] *Yazdchi v. Am. Honda Fin. Corp.*, 217 F. App'x 299, 304 (5th Cir. 2007) (citing *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir.1986)).

[23] *See $49,000 Currency*, 330 F.3d 371.

Court sees no reason for Vigneswaran to rack up monetary sanctions, nor for DISH to continue to incur costs for a litigation that has been protracted through no fault of its own.

Finding that each requirement for granting default against Vigneswaran has been met, the Court finds that default judgment is appropriate. The Court finds *$49,000 Currency* highly instructive; there, the party against whom default was entered had provided inadequate discovery, still provided nothing further after receiving a motion to compel, and provided discovery that was still incomplete to comply with the court order before the government moved for and was granted default judgment.[24]

In *$49,000 Currency*, this Circuit also rejected the proposition that district courts are required to coax compliance by imposing incrementally increasing sanctions.[25] Rather, the order to compel, issued before the sanction of default, "*was* the method by which the district court chose to compel discovery compliance."[26]

Given the pervasiveness of Vigneswaran's refusal to meaningfully advance this litigation with proper discovery, the Court has no reason to think that Vigneswaran will do an about-face from here on out; if anything, continuing to give him inches when he has already taken miles would likely only encourage his behavior. DISH will prevail against Vigneswaran.

3. *Damages*

Under 17 U.S.C. § 504, the copyright owner may recover damages from the infringer. While the copyright owner is entitled to "the actual damages suffered as a result of the infringement,"[27] the copyright owner may elect to

---

[24] *See id.*

[25] *Id.* at 379.

[26] *Id.* (emphasis added).

[27] 17 U.S.C. § 504(b).

instead recover statutory damages.[28] For statutory damages, the range recoverable with respect to any one work is "not less than $70 or more than $30,000 as the court considers just." To determine the appropriate amount for statutory damages, courts consider factors such as "whether the defendant's conduct was innocent or willful, the profits the defendant earned, the revenues the plaintiff lost, whether the defendant has cooperated in providing necessary information, and the potential for discouraging future copyright infringement by the defendant and others."[29]

Where the infringement is willful, the court has discretion to increase the amount to up to $150,000.[30] To determine whether an infringement is willful under 17 U.S.C. § 504(c)(2), this Circuit re-affirmed that "willful" includes not only knowing violations, but also where the defendant should have known or acted with reckless disregard.[31]

DISH has requested the Court to enter $150,000 for each of the 19 registered works that aired after DISH notified Vigneswaran in November, 2020 of the infringement, for $2,850,000 total.[32] In other words, DISH has requested the maximum amount which requires a finding of willful infringement. The Court finds willfulness in this case, as ChitramTV systematically transmitted protected channels despite and after receiving voluminous infringement notices from DISH, including notices sent to Vigneswaran personally.

The Court has already determined that infringement was willful. The record is bare as to the profits earned or revenue lost, but the comprehensiveness of the operation indicates that the money involved was considerable. As for cooperation, Vigneswaran has been far from cooperative. Deterrence

---

[28] *Id.* § 504(c).

[29] *Tempest Pub., Inc. v. Hacienda Records & Recording Studio, Inc.*, 2015 WL 1246644, at *11 (S.D. Tex. 2015).

[30] 17 U.S.C. § 504(c)(2).

[31] *See* Graper v. Mid-Continent Cas. Co., 756 F.3d 388, 394 (5th Cir. 2014).

[32] [Doc. 71] at 2.

considerations favor a larger sum, given the size of the operation and the potential for similar future operations to inflict substantial harm.

These factors each weigh in favor of a higher range of statutory damages. The Court finds, however, that the maximum of $150,000 per registered work would be excessive, particularly considering the lack of proffered actual damages and that Vigneswaran is only one individual who served as but a cog in the machine. DISH will take from Vigneswaran $50,000 for each of the 19 registered works, to the tune of $950,000, plus 4.73% post-judgment interest.[33]

4. *Injunction*

DISH asks the Court to issue a permanent injunction against Vigneswaran. In copyright cases, a court with jurisdiction may grant an injunction when it deems such injunction "reasonable to prevent or restrain infringement of a copyright."[34] To obtain a permanent injunction, the seeking party must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."[35] Finding each factor present here, the Court orders the following:

- Vigneswaran is permanently enjoined from (a) distributing DISH's channels or the works airing on those channels in the United States and (b) distributing, selling, or promoting set-top boxes, subscriptions, or services that provide access to DISH's channels or the works airing on those channels.

---

[33] *See Post-Judgment Interest Rates*, UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS, available at https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2022 (last visited November 15, 2022).

[34] 17 U.S.C. § 502(a).

[35] *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

- Third-party providers, including but not limited to Private Layer, Inc., IP Volume, Inc., Cooperative Investments, LLC, Owl Protect, LLC, Virtual Systems, LLC, Alkar-AS, and FDC Servers.net, LLC, may not provide any services to Vigneswaran related to its (a) distributing DISH's channels or the works airing on those channels in the United States or (b) distributing, selling, or promoting set-top boxes, subscriptions, or services that provide access to DISH's channels or the works airing on those channels. Third-party providers shall comply within forty-eight hours of receiving this order.

5. Conclusion

DISH will take from Vigneswaran $50,000 for each of the 19 registered works, to the tune of $950,000, plus 4.73% post-judgment interest. Additionally, as set forth in this order, Vigneswaran is permanently enjoined from infringing DISH's copyright. (68)

Signed on November 15, 2022, at Houston, Texas.

Lynn N. Hughes
United States District Judge